# UNITED STATES DISTRICT COURT
for the
District of Oregon

United States of America
v.
JONATHAN AVILA-SUAREZ
Defendant(s)

Case No. 3:21-mj-00038

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of February 11, 2021 in the county of Multnomah in the District of Oregon, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1);<br>21 U.S.C. § 843(b); and<br>21 U.S.C. § 856(a) | Possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1);<br>Use of communication facilities in the commission of offenses related to the distribution of controlled substances, in violation of 21 U.S.C. § 843(b); and<br>Maintaining a drug involved premises in violation of 21 U.S.C. § 856(a)<br><br>(Continued on attached Supplement to Complaint Offense Description) |

This criminal complaint is based on these facts:

See the attached affidavit of DEA Special Agent Bradley A. Dixon.

☑ Continued on the attached sheet.

/s/ Signed by telephone
*Complainant's signature*

Bradley A. Dixon, DEA Special Agen
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 8:30 ~~a.m.~~/p.m.

Date: February 11, 2021

*Judge's signature*

City and state:

JOLIE A. RUSSO, U.S. Magistrate Judge
*Printed name and title*

**UNITED STATES v. JONATHAN AVILA-SUAREZ**

**COUNT 1**
**(Possession with Intent to Distribute Heroin)**
**(21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i))**

On or about February 11, 2021 in the District of Oregon, defendant **JONATHAN AVILA-SUAREZ** did unlawfully and knowingly possess with intent to distribute 1 kilogram or more of a mixture or substance containing a detectible amount of heroin, a Schedule I controlled substance,

In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(i).

**COUNT 2**
**(Possession with Intent to Distribute Methamphetamine)**
**(21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii))**

On or about February 11, 2021 in the District of Oregon, defendant **JONATHAN AVILA-SUAREZ** did unlawfully and knowingly possess with intent to distribute 500 grams or more of a mixture or substance containing a detectible amount of methamphetamine, a Schedule II controlled substance,

In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii).

**COUNT 3**
**(Use of a Communication Facility to Distribute Controlled Substances)**
**(21 U.S.C. §§ 843(b))**

On or about February 11, 2011 in the District of Oregon, defendant **JONATHAN AVILA-SUAREZ** did knowingly and intentionally use any communication facility, in facilitating the commission of any act or acts constituting a felony under Title 21, United States Code, Section 841(a) and 856(a), that is, offenses set forth in Counts 1, 2 and 4 of this complaint incorporated by reference herein,

In violation of Title 21, United States Code, Sections 843(b).

**COUNT 4**
**(Maintaining a Drug Involved Premises)**
**(21 U.S.C. §§ 856(a))**

On or about February 11, 2021 in the District of Oregon, defendant **JONATHAN AVILA-SUAREZ** did unlawfully and knowingly use and maintain a place located at 12037 SE Gladstone St. Apartment A20, Portland, Oregon for the purpose of distributing, controlled substances to wit: methamphetamine and heroin,

In violation of Title 21, United States Code, Section 856(a).

DISTRICT OF OREGON, ss: AFFIDAVIT OF BRADLEY A. DIXON

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Bradley A. Dixon, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1. I have been employed as a Special Agent by the Drug Enforcement Administration (DEA) since February of 2017. My current assignment is at the Portland District Office where I am assigned to a DEA Federal Task Force Group. My formal law enforcement training includes successfully completing the 18-week DEA basic training course at the DEA academy in Quantico, Virginia. Since then, I have participated in dozens of drug investigations involving controlled purchase operations, vehicle tracking, cell phone geo-location techniques, cell-site simulators, pen register/trap and trace orders, and Title III wiretaps. I have interviewed and operated informants, executed search warrants, arrested and interviewed subjects, conducted physical surveillance, and utilized electronic and video surveillance. I have also worked with and consulted numerous agents and law enforcement officers who have investigated drug trafficking.

2. I submit this affidavit in support of a criminal complaint and arrest warrant for **Jonathan Avila Suarez** (“**Avila**”) for violations of Title 21, United States Code, Section 841(a)(1), Possession with Intent to Distribute Controlled Substances; Title 21, United States Code, Section 843(b) Unlawful Use of a Communication Facility; and Title 21, United States Code, Section 856(a), Maintaining a Drug Involved Premises;

**Applicable Law**

3. Title 21, United States Code, Section 841(a)(1) makes it illegal to posses controlled substances – including methamphetamine – with the intent to distribute them. Title

21, United States Code, Section 843(b) makes iti unlawful to use a communication facility in furtherance of a drug offense. Title 21, United States Code, Section 856(a), makes it unlawful to maintain a drug-involved premises.

**<u>Statement of Probable Cause</u>**

***Background of the Investigation***

4. In October 2020, Investigators began investigating a Drug Trafficking Organization (DTO) suspected of importing methamphetamine, heroin, and counterfeit oxycodone pills suspected to contain fentanyl from Mexico into California, then destined for Distribution in Oregon and Washington. [redacted] Resulting from the investigation to-date, Investigators have seized over 32 kilograms of methamphetamine, over 11,500 kilograms of heroin, over 500 grams of cocaine, over 850 grams of counterfeit oxycodone pills suspected to contain fentanyl, over $60,000 in suspected drug proceeds, and multiple firearms.

5. As part of the investigation, Investigators have identified Avila [redacted]), and some of the seized drugs and firearms detailed above are directly attributable to Avila. Avila is a convicted felon with felony convictions for unlawful possession of cocaine in 2011, felony unlawful possession of heroin in 2018, and felon in possession of a weapon in 2018.

6. [redacted]

[text redacted]

7. [text redacted]

[text redacted]

*Avila Distributes Drugs on 2-10-2021*

8. [text redacted]

9. [text redacted]

[redacted]

10. [redacted]

11. [redacted], Investigators established covert physical surveillance in the area of Room 236 located within a Motel 6 complex at approximately SE 92nd Ave and SE Stark St in Portland, Oregon ("Room 236"). Then, [redacted] at approximately 4:03 p.m., Investigators observed a black Audi A4 sedan arrive and park in the parking lot near Room 236. Investigators then observed a Hispanic male adult (referred to hereinafter as the "Un-Arrested Co-Conspirator" or "UCC") exit the Audi, approach Room 236, and knock on the door. Investigators then observed the UCC enter Room 236.

12. Shortly thereafter, Investigators observed the UCC exit Room 236 and walk on foot into a nearby 7-Eleven, then return with some food items and re-enter Room 236. Minutes later, Investigators observed the UCC exit with a large, blue, reusable grocery bag, which the UCC then placed in the Audi and departed.

13. Investigators maintained surveillance of the Audi as it travelled to a La Quinta Inn hotel in northwest Portland. Investigators observed the UCC enter the La Quinta Inn with the blue bag, then exit minutes later without the blue bag. Based on a review of hotel records and video footage, Investigators identified the UCC's hotel room as Room 321. Investigators then maintained surveillance of Room 321 while also seeking to obtain a federal search warrant for Room 321. Investigators ultimately observed the UCC arrive back at the La Quinta Inn and approach Room 321. Investigators identified themselves as law enforcement and detained the UCC pending issuance of the warrant for Room 321.

14. Later that evening, Investigators obtained a federal search and seizure warrant for Room 321 and executed the warrant. Pursuant to the warrant, Investigators found and seized over 400 gross grams (with packaging) of heroin inside the microwave in Room 321. At this point, Investigators provided the UCC with his rights per Miranda and asked where the drugs came from.

15. The UCC stated that he was directed by an associate in Mexico to pick up the drugs from the Motel 6, and described the event, which matched Investigators observations of the UCC arriving at Avila's Room 236 at the Motel 6. The UCC said he received the drugs from a Hispanic male, and provided a description that matched Investigators' observations of Avila that day. The UCC said Avila handed him/her the drugs inside the blue reusable grocery bag, which was also found inside the UCC's Room 321 pursuant to the search warrant. When asked about Avila's Room 236, the UCC said he/she observed heroin, methamphetamine, cocaine, and pills on a table in small baggies inside of Avila's Room 236. Investigators seized the heroin and later field tested it, which tested presumptive positive for heroin. The UCC was not arrested and

is pending further investigation.

***Investigators Arrest Avila and Search Avila's Room 236***

16. The following day, on February 11, 2021, Investigators established covert physical surveillance in the area of Avila's Room 236. [REDACTED] Investigators then observed Avila exit Room 236 with several items of luggage ("Avila's Luggage"), which he placed inside a Radio Cab. The Radio Cab, occupied by a driver and Avila, then departed. Investigators conducted a vehicle stop of the Radio Cab and arrested Avila for violations of the Target Offenses. Investigators also seized Avila's Luggage from the Radio Cab.

17. Investigators then approached the Motel 6 manager and asked if Avila had checked out. The manager said Avila had not checked out. Investigators then asked Avila for consent to search Room 236, and Avila provided written consent. Investigators then approached the hotel manager with Avila, who informed the manager that Investigators were allowed to search his room. The manager then provided an electronic key to the room to Investigators. Investigators then entered Room 236 and conducted a consent search. Investigators did not locate any contraband inside the room. Following the search, Investigators transported Avila to the DEA office in Portland, Oregon to process his arrest.

***Search of Avila's Apartment***

18. Prior to the events detailed above, Investigators applied for and were granted a federal search warrant authorizing them to search Avila's apartment – identified throughout the investigation as being located at 12037 SE Gladstone St, Apt A20, Portland, Oregon. U.S.

Magistrate Judge Youlee Yim You authorized the warrant for Avila's apartment in case number 3:21-MC-00132. As Avila was being transported to the DEA office in Portland, Oregon, Investigators executed the search warrant at Avila's apartment.

19. During the execution of the warrant at Avila's Apartment, Investigators encountered a female occupant who identified Avila's bedroom inside the apartment. Investigators also searched the female's bedroom pursuant to the warrant. During the search, Investigators located and seized over 16,600 gross grams (with packaging) of methamphetamine, over 4,500 gross grams of heroin, over 190 gross grams of counterfeit oxycodone pills suspected to contain fentanyl, over 50 gross grams of cocaine, and a handgun. Some of the drugs were found in Avila's bedroom, and some of the drugs and the handgun were found in the female's bedroom. The female stated that the drugs found inside her bedroom were Avila's, but that they were being stored in her bedroom. The female was not arrested and is pending further investigation.

20. Investigators back at the DEA office then approached Avila and provided him with his rights per Miranda and explained the charges that Avila was facing. Investigators explained that they had seized all the drugs at Avila's Apartment. Investigators then asked Avila for his cooperation and consent to search Avila's Luggage. Avila signed a consent to search form authorizing Investigators to search Avila's Luggage. Avila said Investigators would find methamphetamine, heroin, pills, cocaine, and a handgun inside Avila's Luggage. Out of an abundance of caution, Investigators still applied for and obtained a federal search warrant authorizing them to search Avila's Luggage.

21. Investigators also conducted a post-Miranda interview of Avila. During the

interview, Avila admitted to large-scale drug distribution and indicated that he was the one who directed the female found at Avila's Apartment in drug distribution, including directing her to obtain drugs from the stash at Avila's Apartment and deliver them to various people in Portland, Oregon.

***Search of Avila's Luggage***

22. After obtaining the warrant for Avila's Luggage, Investigators executed the warrant by searching Avila's Luggage. Pursuant to the search, Investigators found and seized over 130 gross grams (with packaging) of methamphetamine, over 120 gross grams of counterfeit oxycodone pills suspected to contain fentanyl, over 60 gross grams of cocaine, over 290 gross grams of heroin, a firearm, and money.

23. Investigators have since conducted field tests for portions of each of the amounts of drugs seized during the events detailed above. The methamphetamine tested presumptive positive for methamphetamine and the heroin tested presumptive positive for heroin. For officer safety reasons, the suspected cocaine and suspected counterfeit oxycodone pills were not field tested, but will be tested by a DEA lab.

**Conclusion**

24. Based on the foregoing, I believe **Avila**, possessed and intended to distribute over 16,000 grams of methamphetamine, over 4,700 grams of heroin, over 300 grams of counterfeit oxycodone pills suspected to contain fentanyl, and over 100 grams of cocaine; **Avila** used his cellphone to arrange distribution of these drugs; and **Avila** used his residence and his hotel room to store and distribute drugs; all in violation of the Target Offenses. I therefore request that the Court issue a criminal complaint and arrest warrant for **Avila** for these violations.

25. Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Paul Maloney, and AUSA Maloney advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

**Request for Sealing**

26. It is respectfully requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint and arrest warrant. I believe that sealing these documents is necessary because the information to be seized is relevant to an ongoing investigation, and any disclosure of the information at this time is likely to seriously jeopardize the ongoing investigation. Premature disclosure of the affidavit, the criminal complaint, and the arrest warrant may adversely affect the integrity of the investigation.

*/s/ Sworn to by telephone*
*In accordance with Fed. R. Crim. P. 4.1*
Bradley A. Dixon
DEA Special Agent

Sworn to by telephone at 8:30 a.m./p.m. this 11 day of February 2021 in accordance with Fed. R. Crim. P. 4.1.

Jolie A. Russo
HONORABLE JOLIE A. RUSSO
United States Magistrate Judge