Noel Grefenson
Attorney at Law
1415 Liberty Street SE
Salem, Oregon 97302
(503) 371-1700
NGrefenson@aol.com

    Attorney for Jonathan Avila

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**Portland Division**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JONATHAN AVILA-SUAREZ,<br><br>    Defendant. | Case Nos.:    3:21CR00052-001-IM<br><br>DEFENDANT'S SENTENCING MEMORANDUM |

On May 25, 2023, Mr. Avila-Suarez will appear before the Court for sentencing. At that proceeding and consistent with the recommendation in the presentence report, the parties will jointly recommend that Mr. Avila-Suarez spend ten years in prison for his offense conduct in this case. This joint recommendation is the result of debated and somewhat lengthy negotiations that arrived at a punishment the parties agreed was enough but not too much for this defendant in this case. In other words, a sentence consistent with the directives in 18 U.S.C. §3553(a).

1- DEFENDANT'S SENTENCING MEMORANDUM

Noel Grefenson
Attorney at Law
1415 Liberty Street South
Salem, Oregon 97302
(503) 371-1700
Ngrefenson@aol.com

and base offense level relying on the converted weight of the "actual" methamphetamine attributed to him, a discrepancy noted in the presence report,

    1.    <u>Presentence Report (PSR)</u>

Mr. Avila-Suarez and his counsel have personally reviewed the presentence report and agree that it is accurate in all respects. With notice of the restrictions and limitations of disclosure provided in LR 32-2(a)(2),(3), defense counsel has provided a copy of the final presentence report to Mr. Avila-Suarez.

Before an adjustment for mitigating role, U.S. Probation determined that Mr. Avila-Suarez's base offense level is 38, whereas the plea agreement estimates a base offense level 36. (PSR, ¶ 38) This discrepancy arises from Probation's reliance on the weight of the "actual" methamphetamine at issue (12,795 grams), while the parties looked to the net weight of that drug without regard to purity (approximately 15,874 grams) during their plea negotiations. Probation's calculation is correct. See USSG §2D1.1, Note (B) to the Drug Quantity Table.[1] Probation correctly recommends a 4-level downward adjustment of the base offense level for mitigating role pursuant to USSG §2D1.1(a)(5)(A)(iii) and §3B1.2 which results in base offense level 34. Probation also properly calculates a 2-level specific offense characteristic increase for possession of a firearm pursuant to USSG §2D1.1(b)(1), a two-level decrease for minor participant pursuant to USSG §3B1.2(b), and a 3-level decrease for acceptance of responsibility pursuant to USSG §3E1.1(a), (b). (PSR ¶¶ 38-46) These various increases and decreases culminate in a total offense level 31. (PSR ¶ 47)

---

[1] In pertinent part, that note provides: "In the case of a mixture or substance containing PCP, amphetamine, or methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the PCP (actual), amphetamine (actual), or methamphetamine (actual), whichever is greater."

Noel Grefenson
Attorney at Law
1415 Liberty Street South
Salem, Oregon 97302
(503) 371-1700
Ngrefenson@aol.com

Mr. Avila-Suarez's criminal history is accurately described in Part B of the presentence report and results in 11 points, placing him in criminal history category V. (PSR ¶ 50-57) The resulting advisory sentencing guidelines range at offense level 31, criminal history category V is 168-210 months.

2. Mr. Avila-Suarez's Offense Conduct

According to discovery materials received from the government, in late December 2020, as part of a wire-tape investigation, agents arranged the controlled purchase of heroin and methamphetamine from a Mexico based source of supply. That source eventually instructed Mr. Avila-Suarez to deliver those narcotics on his or her behalf. From this transaction, agents identified Mr. Avila-Suarez's telephone number and eventually they obtained authorization to intercept his electronic communications. The parties relied on those communications to determine Mr. Avila-Suarez's role relative to the other individuals who were identified and prosecuted during this investigation. Basically, Mr. Avila-Suarez was a drug courier who served the interests of higher-ups by maintaining a stash house, ferrying their drugs around and sending them money.

Unfortunately, as a result of these activities, at the time of his arrest, Mr. Avila-Suarez was apprehended with a very large amount of drugs and cash that did not belong to him. Upon arrest, Mr. Avila-Suarez was immediately compliant. He consented to the search of his hotel room and luggage on the condition that agents ensure the safety of his weiner dog, Scooby, his main companion. He next consented to a search of the apartment/stash house where agents seized the bulk of the drugs attributed to him. He took complete responsibility for the drugs and the firearm seized from him and insisted that agents not blame or arrest a female acquaintance who rented the stash-house and drove him around town because he had no license.

Noel Grefenson
Attorney at Law
1415 Liberty Street South
Salem, Oregon 97302
(503) 371-1700
Ngrefenson@aol.com

When assessing Mr. Avila-Suarez's role and relative culpability as part of their negotiations, the government agreed with the following observation of defense counsel:

> Although, per discovery, Mr. Avila-Suarez wired $52,000 to 25 different individuals in Mexico in 2020 and 2021, it appears that he accumulated no significant resources himself. Mr. Avila-Suarez used the money he earned to support his own drug habit, pay rent for a portion of Ms. Finck's residence, her services to ferry him to and from drug transactions, hotels and a storage unit. From their surveillance, I would expect your agents can confirm that everything Mr. Avila-Suarez has to his name consists of his dog, the items in his possession at the time of arrest, and the items observed in his bedroom in Ms. Finck's apartment. This property has no real value. Intercepted communications confirm that Mr. Avila-Suarez had no car and would often stay/live in motel rooms around the city.

Mr. Avila-Suarez's intercepted communications also provide insight into his character and personal struggles. Throughout the investigation he appears to be in a basic survival mode, seeking hotel rooms and shelter, consummating transactions for basic living expenses for himself and his younger brother who, like Mr. Avila-Suarez, is basically homeless. These communications confirm Mr. Avila-Suarez's strong sense and longing for a cohesive and functional family life which has been lacking throughout his life.

   3.   <u>Mr. Avila-Suarez's History</u>

Mr. Avila-Suarez participated in an interview with U.S. Probation and his personal and family life is summarized at paragraphs 62-67 of the presentence report. At age 7, Mr. Avila-Suarez's parents, Mario and Marcela separated. Before that, Mr. Avila-Suarez's home life was marked by Mario's addictions to alcohol and cocaine and physical abuse of Marcella, which eventually landed him in prison for six years. Once a teenager, Mr. Avila-Suarez's own struggles with addictions surfaced resulting in his being removed from his mother's custody and placed in the custody of the Oregon Youth Authority and later in foster care. (PSR ¶ 62-65)

As Mr. Avila-Suarez will inform the Court at sentencing, the majority of his adult life has

4- DEFENDANT'S SENTENCING MEMORANDUM

Noel Grefenson
Attorney at Law
1415 Liberty Street South
Salem, Oregon 97302
(503) 371-1700
Ngrefenson@aol.com

been driven by addictive behavior which he desperately wants to control. An ASAM evaluation report prepared by Beacon Hill in March of 2021, which counsel submits as a confidential supplement to the presentence report, details Mr. Avila-Suarez's life circumstances and confirms that he meets American Society of Addiction Medicine Treatment Criteria for Addictive, Substance-Related, and Co-Occurring Conditions, 3rd Edition for Level 3.5 Clinically Managed High-Intensity Residential Services. That report includes the following observation:

> Mr. Avila-Suarez reported a history of addiction treatment but could not recall receiving mental health treatment. Mr. Avila-Suarez admits he has struggled to cope with symptoms of depression and anxiety. He reported a history of childhood trauma and abuse. His emotional and behavioral problems have significantly distracted from past recovery efforts. Mr. Avila-Suarez meets Diagnostic Statistical Manual of Mental Disorders 5th Edition criteria for Alcohol Use Disorder – severe; Cannabis Use Disorder – severe; Stimulant Use Disorder – severe, amphetamine type; Opioid Use Disorder – severe.

(Confidential Supplement/Beacon Hill Report, pp. 6-7) Mr. Avila-Suarez requests that as part of his sentence, the Court recommends that he be afforded any and all treatment programs offered by the Bureau of Prisons.

As described in the presentence report, Mr. Avila-Suarez and Gabby Laura Lopez have a five-year-old son, Jiovanni Avila-Lopez. (PSR ¶ 66) The couple dated for six years and still maintain a strong relationship. Ms. Lopez recently informed defense counsel that she intends to appear at sentencing to confirm her continued love and support for Mr. Avila-Suarez and speak to the good in him.

Petitioner also has a brother, Brian Avila-Suarez, who, unlike Mr. Avila-Suarez and brother Christian Avila-Suarez, has managed to live a normal, drug-free, crime free life despite the family trials and tribulations. Brian has long-term and steady employment as a roofer in the Portland area. He is extremely supportive of Mr. Avila-Suarez, has maintained contact with

Noel Grefenson
Attorney at Law
1415 Liberty Street South
Salem, Oregon 97302
(503) 371-1700
Ngrefenson@aol.com

defense counsel throughout this prosecution, and is willing to assist Mr. Avila-Suarez in any way possible, to include giving him employment in the roofing industry. Brian has also informed defense counsel that he will appear at sentencing to support Mr. Avila-Suarez.

4. Joint Sentencing Recommendation

At sentencing, the Court is to follow the three-step process set forth by *Gall supra*, 552 U.S. at 49–50 (2007): First, it must properly determine an advisory sentencing guideline range. Second, it must determine whether to apply any of the guidelines departure policy statements to adjust that range. Finally, it must considers all of the factors set forth in 18 U.S.C. § 3553(a), including whether a variance and sentence outside of the guidelines range is appropriate.[2] *See also, United States v. Carty*, 520 F.3d 984, 992 (9th Cir. 2008). The guidelines range determined by the Court is not presumed to be reasonable and it is not necessary to find "extraordinary circumstances" in order to impose a variance sentence outside of that range, because the guidelines are but one of several § 3553(a) factors to consider when determining an appropriate sentence.

In the end, the Court's "overarching statutory charge . . . is to impose a sentence sufficient, but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; and to protect the

---

[2] 18 U.S.C. §3553(a)(2) provides:

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
the need for the sentence imposed—
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"

6- DEFENDANT'S SENTENCING MEMORANDUM

Noel Grefenson
Attorney at Law
1415 Liberty Street South
Salem, Oregon 97302
(503) 371-1700
Ngrefenson@aol.com

public." *United States v. Lizarraras-Chacon*, 14 F.4th 961, 966 (9th Cir. 2021). *United States v. Booker*, 543 U.S. 220 (2005).

Here, that sentence is ten years in prison. While it is true that the advisory sentencing guidelines provide a range that is significantly higher than 120 months in prison, that result is artificially inflated by the significant quantity of methamphetamine seized from a stash house which belonged to other persons who stood to reap almost all of the financial gain produced by those drugs. In this sense, Mr. Avila-Suarez's conduct is more akin to that of a courier, or mule who is apprehended while transporting a large quantity of drugs from one point to the other at the direction of leaders and organizers of the operation. Here a number of individuals who would fall within that description have already received sentences which are well-below the ten-year sentence recommended for Mr. Avila-Suarez.

In addition, a good portion of Mr. Avila-Suarez's criminal history score is the result of misdemeanor convictions and offenses tied directly to his drug use. In this regard, Mr. Avila-Suarez's criminal history score is overstated and together with the factors described above should honestly support a variance to the sentence recommended by the parties.

For all of the reasons discussed in this memorandum a prison sentence of 120 months is reasonable, appropriate and consistent with the requirements of § 3553(a). Mr. Avila-Suarez also requests a recommendation for placement at FCI Sheridan.

Dated: May, 19, 2023.

/s/ Noel Grefenson
Noel Grefenson, OSB No. 882168
Attorney for Jonathan Avila-Suarez

7- DEFENDANT'S SENTENCING MEMORANDUM

Noel Grefenson
Attorney at Law
1415 Liberty Street South
Salem, Oregon 97302
(503) 371-1700
Ngrefenson@aol.com